UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S3-4:15 CR 440 AGF (JMB) |
| | ) | |
| SHONTELL HILL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM, ORDER AND**
**RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**

Currently before the Court are five pretrial motions filed by Defendant Shontell Hill

(hereinafter "Defendant" or "Shontell Hill").[1]  In particular, Shontell Hill has filed motions:

1. Seeking to dismiss the third superseding indictment in this case on grounds of
   vindictive prosecution; (ECF No. 133)

2. To dismiss Count One of the third superseding indictment, which charges a
   conspiracy to defraud the United States, on duplicity grounds, because it allegedly
   charges two separate conspiracies in one count; (ECF No. 135)

3. To dismiss Counts Six and Seven, charging Aggravated Identity Theft, on the
   grounds that Shontell Hill had the permission of the "victim" in those counts to
   use the victim's identification; (ECF No. 137)

4. For disclosure of favorable evidence, under Brady v. Maryland, 373 U.S. 83
   (1963), and Giglio v. United States, 405 U.S. 150 (1972); (ECF No. 139) and

5. For an order requiring "immediate" notice of the government's intent to use
   evidence pursuant to Fed. R. Evid. 404(b).  (ECF No. 141)

Shontell Hill has filed memoranda in support of the respective motions.  (ECF Nos. 134,

136, 138, 140, 142)  The government has filed responses to the motions, and Shontell Hill has

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge,
under 28 U.S.C. § 636(b).

replied.  On June 27, 2016, the undersigned held a hearing on these motions.[2]  At the hearing, Shontell Hill was present, along with her counsel, Douglas P. Roller.  The undersigned heard argument from the parties concerning the motions, and took the matter under advisement.[3]

For the reasons stated below, the undersigned recommends that the Court deny Shontell Hill's motion to dismiss the third superseding indictment, motion to dismiss Count One, and motion to dismiss Counts Six and Seven.  The undersigned also will deny, without prejudice, Shontell Hill's motions for disclosure of favorable evidence, and for an order requiring notice of the government's intent to use evidence pursuant to Fed. R. Evid. 404(b).

## PRODECURAL BACKGROUND

## I.    Prior Indictments

The complicated procedural history of this matter began on September 23, 2015, when Pierre Watson ("Watson") and Darisha Taylor ("Taylor") were indicted based on a scheme to pass counterfeit checks at federally insured financial institutions.  Shontell Hill was not named in the initial indictment.  According to the government, its investigators became aware of Shontell Hill's involvement in this scheme during the course of their investigation of Watson and Taylor.  The government suspected that Shontell Hill had passed counterfeit checks drawn on an account similar to that used by Taylor, and the government also learned that Shontell Hill had placed telephone calls to Taylor, at Watson's behest, encouraging Taylor to complete a fraudulent affidavit intended to exonerate Watson.

_____

[2] The Court also heard the Government's motion for a hearing pursuant to Frye v. Missouri, 132 S. Ct. 1399 (2012).  The Court disposed of this motion in an order dated July 22, 2016.  (ECF No. 174)

[3] Co-Defendant Pierre Watson also filed several pretrial motions.  The undersigned will address Watson's pretrial motions in a separate Report and Recommendation.  Co-Defendant Desiree Hill has waived her right to pursue pretrial motions in this matter.

On February 24, 2016, Shontell Hill was indicted separately from Watson and Taylor in United States v. Shontell Hill, 4:16 CR 81 JAR (NAB). The separate indictment charged Shontell Hill with one count of bank fraud (Count One), two counts of passing counterfeit securities (Counts Two and Three), and two counts of aggravated identity theft (Counts Four and Five. Shontell Hill made her initial appearance on March 28, 2016, and soon after, entered into negotiations with the government regarding a possible plea agreement. Negotiations between Shontell Hill and the government broke down, however, apparently over the government's insistence that she plead guilty to one of the aggravated identify theft charges.

Shontell Hill rejected the government's plea offer on May 15, 2016, and on May 18, 2016, the government filed a third superseding indictment in the instant matter,[4] which joined her with her co-conspirators Watson, and Desiree Hill (Shontell Hill's daughter). The third superseding indictment also added charges against Shontell Hill that were not in cause no. 4:16 CR 81 JAR, and modified the details of other charges against her.[5] The new charges included a conspiracy charge, an additional bank fraud charge, and a witness tampering charge. Shontell Hill was arraigned on the third superseding indictment on May 23, 2016, and she filed the above pretrial motions on June 14, 2016. Table I summarizes the pending charges in the third superseding indictment.

---

[4] The government obtained two superseding indictments regarding Watson. Shontell Hill was not named, but was referenced by initials in the second superseding indictment. In particular, Shontell Hill was referenced in the witness tampering count in the second superseding indictment. The history of those superseding indictments is discussed in greater detail in the Report and Recommendation focused on Watson's motions attacking the third superseding indictment.

[5] For example, the original indictment against Shontell Hill included two Aggravated Identity Theft counts. The third superseding indictment in the instant matter also charges Shontell Hill with two counts of Aggravated Identity Theft, but the factual allegations are different from the original indictment. The original indictment in cause no. 4:16 CR 81 JAR has been dismissed and the motions filed therein are now moot.

| Table I | | |
|---|---|---|
| **Count** | **Defendants** | **Summary of Charge** |
| One | Pierre Watson<br>Shontell Hill<br>Desiree Hill | Conspiracy to Defraud, including conspiracy to pass counterfeit securities, to commit identity theft and aggravated identity theft, and bank fraud, all in violation of 18 U.S.C. § 371 |
| Two | Pierre Watson<br>Shontell Hill | Bank Fraud, in violation of 18 U.S.C. § 1344 |
| Three | Shontell Hill<br>Desiree Hill | Bank Fraud, in violation of 18 U.S.C. § 1344 |
| Four | Pierre Watson | Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A |
| Five | Pierre Watson | Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A |
| Six | Shontell Hill | Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A |
| Seven | Shontell Hill | Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A |
| Eight | Pierre Watson<br>Shontell Hill | Passing Counterfeit Securities, in violation of 18 U.S.C. § 513(a) |
| Nine | Pierre Watson | Passing Counterfeit Securities, in violation of 18 U.S.C. § 513(a) |
| Ten | Desiree Hill | Passing Counterfeit Securities, in violation of 18 U.S.C. § 513(a) |
| Eleven | Pierre Watson | Possession of Implement for Making Counterfeit Securities, in violation of 18 U.S.C. § 513(b) |
| Twelve | Pierre Watson<br>Shontell Hill | Witness Tampering, in violation of 18 U.S.C. § 1512(b)(1) |

Additional factual background will be integrated into the discussion of each motion, as necessary.

## ANALYSIS

## I.    Motion to Dismiss the Third Superseding Indictment Due to Vindictive Prosecution

Shontell Hill contends that the third superseding indictment should be dismissed on the grounds of vindictive prosecution. She argues that that the sequence of events in the plea negotiations and the government's subsequent charges "establish without question" that the third

superseding indictment—which joins Shontell Hill with co-defendants Watson and Desiree Hill, and adds charges of conspiracy and witness tampering (among other changes)—was vindictive, in violation of her due process rights under the Fifth Amendment.  Shontell Hill claims that this superseding indictment was filed in response to her exercise of her "constitutional right not to plead guilty" and her refusal to cooperate.  (ECF Nos. 133 at 3, and 164 at 4)  Further, Shontell Hill argues that a presumption of vindictiveness applies in situations, like this one, where "additional charges are based on the same conduct that was the subject of the first indictment, when the same sovereign is involved, and most importantly, when the decision to file increased charges directly followed the assertion of a procedural right."  (ECF No. 134) (quoting United States v. Garza-Juarez, 992 F.2d 896, 907 (9th Cir. 1993)).

The government responds by arguing that there was no vindictive prosecution in this matter, and that the decision to file additional charges was "the result of a breakdown of plea negotiations rather than a desire to punish the defendant for exercising her constitutional right to trial."  (ECF No. 159 at 5)  The government argues that the charges in the original indictment "d[id] not necessarily define the extent of the legitimate interest in prosecution," and that the government had a right to file additional charges if an initial expectation that Defendant would plead guilty to lesser charges proved unfounded.  (Id. at 5-6) (quoting United States v. Beede, 974 F.2d 948, 952 (8th Cir. 1992)).  Finally, the government argues that Shontell Hill has produced no "specific factual allegations showing actual vindictiveness."  (Id. at 6)

### A.    **Applicable Legal Standards**

As a general matter, federal prosecutors possess broad discretion to initiate and conduct criminal prosecutions.  United States v. Armstrong, 517 U.S. 456, 464 (1996).  This discretion extends to whether to bring charges, and what charges to bring, if charges are brought.  See, e.g.,

United States v. Kelley, 152 F.3d 881, 886 (8th Cir. 1998) (noting that the decision to prosecute a defendant, but not an allegedly similarly-situated offender, for mail fraud was within prosecutor's discretion because probable cause existed to prosecute defendant); Parkhurst v. Tabor, 569 F.3d 861, 867 (8th Cir. 2009) (noting that decision of what charge to bring is within the prosecutor's discretion).

This deference to the government's prosecution decisions arises from separation of powers principles, and because courts are particularly ill-suited to reviewing prosecutorial decisions. See, e.g., Armstrong, 517 U.S. at 464 (holding that separation of powers requires broad prosecutorial discretion); Flowers v. City of Minneapolis, 558 F.3d 794 798 (8th Cir. 2009) (noting that the decision whether to prosecute is ill-suited to judicial review).

This discretion has limits, however. As relevant to this case, it violates the Due Process Clause of the Fifth Amendment for a prosecutor to engage in vindictive prosecution—to punish a defendant for exercising her statutory or constitutional rights. See United States v. Goodwin, 457 U.S. 368, 372 (1982). "Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right." United States v. Williams, 793 F.3d 957, 963 (8th Cir. 2015). "In order to demonstrate prosecutorial vindictiveness, a defendant must show that the superseding indictment containing the additional charges was sought in retaliation for exercising constitutional or statutory rights." United States v. Chappell, 779 F.3d 872, 879 (8th Cir. 2015) (quoting United States v. Punelli, 892 F.2d 1364, 1371 (8th Cir. 1990)). A defendant can make this showing in two ways.

First, a defendant can prove actual prosecutorial vindictiveness with objective evidence of the prosecutor's improper motive in increasing the number or severity of charges. Williams, 793 F.3d at 963. Second, if there is no such objective evidence, a defendant may, in rare

instances, rely upon a presumption of vindictiveness "if [s]he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." Chappell, 779 F.3d at 879 (internal citations and quotations omitted). If a defendant makes this presumptive showing, the prosecutor then bears the burden of rebutting the presumption by showing objective reasons for the additional charge that were not present when the original charge was brought. See Goodwin, 457 U.S. at 376 n. 8. "To determine whether the presumption of vindictiveness applies, the Court must examine the prosecutor's actions in the context of the entire proceedings." Chappell, 779 F.3d at 880 (internal quotations and citations omitted).

In alleging vindictive prosecution, defendants carry a "heavy" evidentiary burden because of the broad discretion prosecutors are due. Leathers, 354 F.3d at 961. Instead, a "presumption of regularity" attaches to prosecutorial decisions "in the absence of clear evidence to the contrary" because "courts presume that [prosecutors] have properly discharged their official duties." Chappell, 779 F.3d at 880 (citations omitted).

Finally, as relevant to this case, a presumption of vindictiveness ordinarily does not arise in the pretrial setting. See Goodwin, 457 U.S. at 381 ("[A] change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision."); see also United States v. Stenger, 605 F.3d 492, 498-99 (8th Cir. 2010) (holding that no presumption of vindictiveness exists when government filed additional charges after defendant refused to plead guilty). Instead, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file … generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).

B.    **Analysis**

There is no objective evidence of actual vindictiveness in this case, and Shontell Hill appears to be arguing for a presumption of vindictiveness, as opposed to direct or objective evidence of vindictiveness.  (See ECF No. 134 at 1) ("A superseding indictment 'supports a presumption of vindictiveness when the additional charges are based on the same conduct that was the subject of the first indictment, when the same sovereign is involved, and most importantly, when the decision to file increased charges directly followed the assertion of a procedural right.'") (quoting Garza-Juarez, 992 F.2d at 907).

The only direct evidence bearing on prosecutorial motivation in this case demonstrates a proper motive on the part of the government.  In Shontell Hill's own motion to dismiss, she quotes from an email that the prosecutor sent to Judge Ross' chambers, and her own defense counsel, which explains the reasoning behind the third superseding indictment.  The prosecutor represented that "[a]s a result of further investigation, the US Attorney's Office [has] decided to file additional charges against Shontell Hill."  (See ECF No. 133 at ¶ 6)

New evidence uncovered as part of an ongoing investigation is a proper, objective reason for additional charges, and defeats any claim of prosecutorial vindictiveness.  See Chappel, 779 F.3d at 881 ("There can be no prosecutorial vindictiveness if the prosecutor revised the charge because of newly discovered evidence or some objective reason other than to punish the defendant for exercising his legal rights.") (quoting United States v. Campbell, 410 F.3d 456, 462 (8th Cir. 2005)).  Therefore, Shontell Hill has not come forward with direct evidence of prosecutorial vindictiveness.

Moving on to the second inquiry, it is also clear that Shontell Hill has not alleged facts that would give rise to a presumption of vindictiveness.  Here, Shontell Hill argues that she is

being punished with additional charges as payback for invoking her right to proceed to trial as well as her right *not to cooperate with the government's investigation*. As proof, Shontell Hill points to the sequence of events in her negotiations with the government. In her view, the fact that the new charges followed so closely after her assertion of her rights, "establish[es] without question" that the third superseding indictment gives rise to a presumption of vindictiveness. This argument is unavailing for at least two reasons.

First, timing and sequence alone cannot establish a presumption of vindictiveness in the Eighth Circuit. See Chappell, 779 F.3d at 881 ("We also reject [the defendant's] unsupported assertions that timing alone gives rise to reasonable likelihood of vindictiveness.") (internal quotations and citation omitted). Shontell Hill relies on United States v. Garza-Juarez, 992 F.2d 896, 907 (9th Cir. 1993), and Adamson v. Ricketts, 865 F.2d 1101, 1018 (9th Cir. 1983) (en banc) for the proposition that there is presumption of vindictiveness when additional charges are filed based on the same conduct, when the same sovereign is involved, and when the decision to file increased charges follows directly after the assertion of a procedural right. (ECF No. 134 at 1) As noted above, however, these Ninth Circuit decisions are inconsistent with binding Eighth Circuit precedent. See Chappell, 779 F.3d at 881 (rejecting the contention that timing alone can give rise to a reasonable likelihood of vindictiveness). Therefore, Shontell Hill's main argument—that the timing and sequence of events establishes that she was punished for exercising her right to trial and to refuse to cooperate—is not supported by Eighth Circuit law.

Moreover, even if Garza-Juarez were consistent with Eighth Circuit precedent, the holding of that case would offer no help to Shontell Hill in this case. In Garza-Juarez, the government originally indicted the defendant on various charges, including selling firearms to a felon. The prosecutor then sent two communications to the defendant. One communication to

the defendant's lawyer said that "[y]ou may wish to consider that your client … plead guilty very quickly or I will consider filing additional charges against your client." The second said that a beneficial plea bargain would be withdrawn unless the defendant withdrew his pretrial motions to dismiss the indictment. Garza-Juarez, 992 F.2d at 901-02.

Even in the face of these direct threats from the government, which were made in direct response to the defendant's invocation of his right to forego a plea deal, go to trial, and file pre-trial motions, the Ninth Circuit found that there was no prosecutorial vindictiveness. Id. at 907. Shontell Hill offers no facts in this case that even rise to the level of the facts in Garza-Juarez.

This conclusion that timing alone cannot give rise to a presumption of vindictiveness is even more appropriate in the pretrial phase, where prosecutors have additional discretion, and the defendant bears a heavier burden. Cf. Goodwin, 457 U.S. at 381; see also Bordenkircher, 434 U.S. at 364.

Second, even if the timing and sequence of events alone could give rise to a presumption of vindictiveness, Shontell Hill cites no case law showing that the specific right she invokes (to refuse to cooperate in a government investigation) in fact exists. For one thing, as Shontell Hill concedes, binding case law permits the government to threaten defendants with increased sanctions for not pleading guilty, and to carry through on that threat. See, e.g., Luna v. Black, 772 F.2d 448, 450 (8th Cir. 1985) (permitting the government to follow through on a threat to bring stiffer charges where a defendant refuses to plead guilty). But Shontell Hill attempts to distinguish those cases from the situation here by claiming that the government is punishing her because of her refusal to cooperate with the government's investigation of her co-defendant. (See ECF No. 164 at 3) ("The facts overwhelmingly establish that Shontell Hill was punished for

not only not pleading guilty but additionally _**for refusing to cooperate with the government**_. That is what sets this case apart from the normal failure to plead cases.") (emphasis in original).

Shontell Hill's distinction is not dispositive. While it appears that the Eighth Circuit has not addressed Shontell Hill's precise contention,[6] it also appears to be the unanimous opinion of other circuits that have considered the question that a prosecutor can in fact pressure a defendant to cooperate with the threat of extra charges if they do not. See, e.g., United States v. Kent, 649 F.3d 906, 914 (9th Cir. 2011) (holding that "a prosecutor who, in the plea negotiation context, threatens enhanced charges to induce a defendant's cooperation as an informant may carry out that threat if the defendant declines to cooperate, regardless of the defendant's willingness to plead guilty unconditionally to the lesser charges"); United States v. Williams, 47 F.3d 658, 664 (4th Cir. 1995) ("[W]e see no problem [with] allowing the prosecutor to bring more lenient initial charges and threaten to bring more severe charges if the defendant refuses to cooperate."); United States v. Long, 823 F.2d 1209, 1211 (7th Cir. 1987) (holding that a prosecutor's decision to obtain a more severe indictment after a defendant refused to cooperate with police did not arise out of prosecutorial vindictiveness because a defendant does not have a right to refuse to cooperate with authorities); and United States v. Oliver, 787 F.2d 124, 125-26 (3rd Cir. 1986) (holding there was no prosecutorial vindictiveness where federal charges were brought due to defendant's failure to cooperate satisfactorily with local authorities). Cf. United States v. Sanders, 211 F.3d 711, 719 (2nd Cir. 2000) (holding that defendants were not entitled to

---

[6] At the hearing on this matter, the government argued that the case of United States v. Kelley, 152 F.3d 881, 886 (8th Cir. 1998) settles this matter. But Kelley does not answer the precise question of whether the government may bring increased charges based upon a defendant's refusal to cooperate with law enforcement. It merely held that the defendants in that case "failed to allege specific facts sufficient to raise a significant doubt that the government's decision to prosecute was vindictive or retaliatory because [the defendant] refused to cooperate." Id.

presumption of prosecutorial vindictiveness where they were prosecuted after refusing to cooperate with law enforcement by divulging confidential sources). Shontell Hill cites no contrary, controlling case law establishing her right to refuse to cooperate with the government and (at the same time) prevent the government from responding with increased charges. Shontell Hill has not alleged that the government has impermissibly threatened a viable right.

Finally, Shontell Hill has not shown how the changes regarding the specific charges between her original indictment and the present indictment reflect any prosecutorial vindictiveness. At the hearing in this matter, Shontell Hill indicated that the main sticking point in plea negotiations involved the government's insistence that she plead guilty to an Aggravated Identity Theft count. There were two Aggravated Identity Theft counts in the original indictment, and there are two Aggravated Identity Theft counts in the instant indictment (albeit involving different factual predicates).

To the extent Shontell Hill contends including a witness tampering charge against her reflects vindictiveness, such a contention would fail. As already noted above, Shontell Hill contends that she is being improperly punished, at least in part, for refusing to cooperate against Watson. Shontell Hill was the other party to Watson's alleged witness tampering scheme. Shontell Hill was even identified by initials in the second superseding indictment that first introduced the witness tampering scheme. It should come as a surprise to nobody that, upon Shontell Hill's failure to cooperate in the prosecution of the scheme, the government might elect to then charge her for her alleged participation in the scheme.

In sum, Shontell Hill has offered no direct evidence of prosecutorial vindictiveness, and has not overcome her "heavy" burden to prove that a reasonable likelihood of vindictiveness exists. Leathers, 354 F.3d at 961. This is especially true given the pretrial context of the

-12-

charging decision.  See Goodwin, 457 U.S. at 381; and Bordenkircher, 434 U.S. at 363.  Shontell

Hill is not entitled to relief on this ground, and the undersigned recommends that her motion to

dismiss the third superseding indictment be denied.

## II.    Motion to Dismiss Count One

Shontell Hill also argues that the Court should dismiss Count One because it is

duplicitous—that Count One impermissibly charges two different offences in a single count.

(ECF No. 135)  The basic premise of Shontell Hill's argument is that there was one "scheme and

artifice" to commit bank fraud which occurred in August of 2014, and a separate "scheme and

artifice" to commit bank fraud which occurred in May, 2015—yet, the government charged a

single conspiracy stretching from August 2014 to May 2015.  (ECF No. 135 at ¶ 5)  Shontell Hill

argues that, because the indictment charges two separate schemes and artifices—Count Two

contains the August 2014 Bank Fraud allegations, and Count Three contains the May 2015 Bank

Fraud allegations—it naturally follows that the indictment should have alleged two different

conspiracies.  Shontell Hill attempts to strengthen this argument by pointing out that the two

schemes occurred almost a year apart, and included different co-defendants.  Finally, Shontell

Hill argues that she is prejudiced by the alleged duplicity of Count One because of the risk that a

jury might convict her of conspiracy without a unanimous agreement as to which conspiracy she

was guilty of, or that a general verdict might obscure the fact that she could have been found not

guilty of one of the conspiracies.

The government responds by arguing that that "[w]hile the conspiracy count in the case at

bar alleges various overt acts occurring over slightly more than 13 months with different

individuals, there was a single agreement and goal, which was 'to profit from passing counterfeit

checks at federally insured financial institutions.'" (ECF No. 151 at 2) Therefore, according to the government, the indictment only charges a single conspiracy.

### A.    **Applicable Legal Standards**

"An indictment is duplicitous when it combines two or more distinct and separate offenses into a single count." United States v. Yielding, 657 F.3d 688, 702 (8th Cir. 2011). A duplicitous indictment is problematic because a jury may convict a defendant without unanimous agreement on the particular offense of conviction. See United States v. Nattier, 127 F.3d 655, 657 (8th Cir. 1997). That risk can be cured, however, "by a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act." Id.

As to conspiracies, "[w]hether the Government's proof at trial established only a single conspiracy or multiple conspiracies is determined by the totality of the circumstances …." United States v. Gilbert, 721 F.3d 1000, 1005 (8th Cir. 2013) (quoting United States v. Slagg, 651 F.3d 832, 841 (8th Cir. 2011)). Relevant factors include "the nature of the activities involved, the location where the alleged events of the conspiracy took place, the identity of the conspirators involved, and the time frame in which the acts occurred." Id. (quoting United States v. Radtke, 415 F.3d 826, 838-39 (8th Cir. 2005)). "A single conspiracy may be found when the defendants share a common overall goal and the same method is used to achieve that goal, even if the actors are not always the same." Id. (quoting United States v. Bascope-Zurita, 68 F.3d 1057, 1061 (8th Cir. 1995)).

### B.    **Analysis**

Shontell Hill's contention that the indictment impermissibly charges two conspiracies in Count One, and that Count One must therefore be dismissed, is unavailing. First, the indictment charges only one conspiracy. Although Count One alleges a conspiracy to violate multiple

federal statutes, there was one object to this conspiracy—to defraud federally insured institutions within the Eastern District of Missouri by means of passing fraudulent checks. Hence, even though multiple different individuals were involved in this goal, and the overt acts took place over many months (with a gap in the middle), there was only one overall and ongoing goal, and therefore, one conspiracy.

This case is analogous to the situation in United States v. Gilbert, 721 F.3d 1000 (8th Cir. 2013). In Gilbert, an employee of an armored car service in Little Rock, Arkansas, decided to rob one of his company's armored cars after talking with co-workers, and determining that none of them would put up resistance if they were robbed. From 2005 to 2007, the employee recruited several co-conspirators to join his robbery conspiracy. The specific individuals involved in the conspiracy changed over the course of the two years, and various robbery attempts were made over those years involving different people. Gilbert, 721 F.3d at 1002-04. Indeed, at one point, the original instigator of the conspiracy moved out of state, and other individuals moved into leadership roles. Id. at 1003.

After the group finally completed a robbery in 2007, the perpetrators were arrested, and the government subsequently unraveled the extensive history of attempts and the extent of the conspiracy. The defendants who went to trial argued that there was not one conspiracy, but multiple conspiracies, relying on many of the same arguments as Shontell Hill. They argued that there was a first conspiracy based upon the original people recruited to rob an armored car in 2005, and a second conspiracy involving different people who actually robbed an armored car two years later in 2007. The Eighth Circuit rejected this argument, holding that "each defendant participated in a single, ongoing conspiracy to rob an [armored car] in the Little Rock area between 2005 and 2007." Gilbert, 721 F.3d at 1005.

Similarly, in this case, Count One of the indictment alleges a single conspiracy between Watson, Shontell Hill, and Desiree Hill to profit from passing counterfeit checks at federally insured financial institutions within the Eastern District of Missouri between July 9, 2014, and May 22, 2015. As in Gilbert, the overt acts in furtherance of the conspiracy happened over a period of time; and different individuals were involved in the conspiracy at different times (sometimes, only Shontell Hill and Watson were involved, and sometimes, only Shontell Hill and Desiree Hill were involved). But this does not take away from the fact that there was a single, ongoing objective, using substantially similar means, within the same general area, and therefore a single conspiracy. See Gilbert 721 F.3d at 1005 (holding that acts occurring over the course of several years can be part of a single conspiracy); see also United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1998) ("A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions.").

Furthermore, even if the facts at trial arguably showed that Count One of the third superseding indictment involved two (or more) conspiracies, that result would not require dismissal of Count One. Rather, the Court could account for and cure this potential problem using appropriate limiting instructions to instruct the jury that it must unanimously convict on one of the conspiracies. This would eliminate any double jeopardy / duplicity risk. See Yielding, 657 F.3d at 703 (holding that a single count charging 18 violations of a statute was not duplicitous, after the district court instructed the jury that—to convict on that count—the jury had to agree unanimously that at least one of the 18 alleged violations in fact occurred). See also United States v. Clay, 579 F.3d 919, 931 (8th Cir. 2009) (the question of one versus multiple conspiracies is a question of fact for the jury to resolve) (citing United States v. England, 966

F.2d 403, 406 (8th Cir. 1992)); Eighth Circuit Model Jury Instruction 5.06B (single vs. multiple conspiracies).

Therefore, Shontell Hill is not entitled to relief on this ground, because:  (1) only a single conspiracy was charged, and; (2) because even if two conspiracies were improperly charged, a less drastic remedy than dismissal would alleviate any prejudice.  The undersigned recommends that the motion to dismiss Count One be denied.

## III.    Motion to Dismiss Counts Six and Seven

Hill also argues that Counts Six and Seven—which allege two different instances of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A—must be dismissed because they fail to state an offense when read in conjunction with Count One (the conspiracy count) of the third superseding indictment.  (ECF No. 137 at 3)  Section 1028A states, in relevant part—

> Whoever, during and in relation to any felony violation [including bank fraud], knowingly transfers, possesses, or uses, *without lawful authority*, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1) (emphasis added).

Shontell Hill's argument involves three steps.  First, she points out that Counts Six and Seven track the statutory language cited above and require that the defendant use the identity of another person *without lawful authority*.  Second, she points out that Counts Six and Seven allege that the means of identification used comprised "the name, prepaid debit card number, and personal identification number of DESIREE HILL."  Third, she points to language in Count One of the third superseding indictment which alleges that Desiree Hill gave Shontell Hill permission to use her identity to commit the overt acts described in Count One.  Combining these three points, Shontell Hill argues that, Counts Six and Seven do not state an offense because she *had*

*lawful authority* to use the means of identification alleged due to the permission given by Desiree Hill.

The government's response appears to address a somewhat different point. The government argues that Shontell Hill is making an improper argument that the government cannot meet its factual burden. (ECF No. 148 at 1-2) The government also argues that the discovery handed over to Shontell Hill "suffices to address defendant's concerns" because it shows that at least some of the actions alleged took place without Desiree Hill's knowledge or permission, including the depositing of some checks. The government argues that this discovery, combined with the language of the indictment, "suffices to address defendant's concerns," because it informs her of the nature of the charge with sufficient precision to enable her to prepare for trial and avoid or minimize the danger of surprise at trial.[7] (ECF No. 148 at 2)

An indictment is required to be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." See Fed. R. Crim. P. 7(c)(1). An indictment is sufficient where it contains the elements of the offense charged, lets the defendant know what she needs to do to defend herself, and would allow her to plead a former acquittal or conviction if she were charged with a similar offense. United States v. Whitlow, 815 F.3d 430, 433 (8th Cir. 2016). "Usually, an indictment that tracks the statutory language is sufficient." Id.

Counts Six and Seven meet this standard. Counts Six and Seven track the statutory language, give Shontell Hill notice as to the factual basis for the charge, and allow her to begin preparing a defense. Indeed, Shontell Hill's motion concedes as much, and instead argues that

---

[7] Shontell Hill replies by arguing that the government did not focus on her argument that the language of the indictment fails to state an offense—the government focuses on whether Shontell Hill was given notice of the charges via the indictment and discovery. (ECF No. 160 at 1-2) The undersigned is aware of this contention, and will address Shontell Hill's argument that the indictment fails to state an offense.

the facts alleged in the indictment itself do not amount to a violation of the statute because she had Desiree Hill's permission to use Desiree's identity.

Shontell Hill's "permission" argument is foreclosed by Eighth Circuit precedent. The fact that Desiree Hill gave Shontell Hill permission to use her identification does not mean that Shontell Hill used the identification with lawful authority, as that phrased is used in § 1028A. Stated differently, permission does not equate to lawful authority under the law interpreting § 1028A. See United States v. Retana, 641 F.3d 272, 274 (8th Cir. 2011) (rejecting the contention that a defendant had "lawful authority" to use a means of identification by having the permission of the person whose identify was used); see also United States v. Hines, 472 F.3d 1038, 1040 (8th Cir. 2007) (per curiam) (holding that the use of another person's social security number to commit a qualifying felony, even with that person's permission, served as use "without lawful authority," in violation § 1028A).

Therefore, for purposes of assessing whether Counts Six and Seven state a violation of § 1028A, it does not matter that Desiree Hill gave permission to Shontell Hill to use Desiree's identification—use of Desiree Hill's identification to commit bank fraud may still constitutes a violation of § 1028A if the government proves there was no lawful authority.[8] Because Shontell Hill concedes that the rest of the elements of §1028A are properly alleged, Counts Six and Seven

---

[8] Because of this determination, it is unnecessary to resolve the Government's contention that the indictment, combined with discovery, serve to give Shontell Hill notice of the fact that some facts show that Shontell Hill used Desiree Hill's identification without the latter's knowledge or permission.

Furthermore, even if the ultimate verdicts at trial could reasonably be viewed as inconsistent, that result would not likely form a basis for relief on appeal. See, e.g., United States v. Opare-Addo, 486 F.3d 414, 416-17 (8th Cir. 2007) ("We have previously held, when considering what are characterized as inconsistent verdicts, that we only ask whether the government present sufficient evidence to support the conviction.") (citation omitted). Thus, Shontell Hill is not entitled to the dismissal of any count, to the extent her argument is that a conviction on Count One would be inconsistent with a conviction on Counts Six and/or Seven.

are sufficient.  See United States v. Beasley, 688 F.3d 523, 533 (8th Cir. 2012) (holding an indictment is sufficient where it contains all of the essential elements of the offense charged; fairly informs the defendant of the charges against which he must defend; and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution); see also United States v. Tebeau, 713 F.3d 955, 962 (8th Cir. 2013) (holding that an indictment tracking statutory language is sufficient).  The undersigned recommends that Hill's Motion to Dismiss Counts Six and Seven be denied.

## IV.    Motion for Disclosure of Favorable Evidence

Shontell Hill also moves the Court for an order requiring the government to disclose favorable evidence to her, pursuant to Brady v. Maryland, 373 U.S. 83 (1963).  Shontell Hill alleges that conversations between her and Watson, which were recorded by a jail recording system where Watson was being held, show that she was pressured and coerced into participating in Watson's criminal schemes.  Shontell Hill alleges that evidence of such threats is favorable to her; that the government has knowledge of these conversations; and that the government has a duty to turn them over to her.  In response, the government contends that it has handed over all taped conversations between Shontell Hill and Watson that are in its possession. Shontell Hill then goes further and argues that the government has an affirmative duty to identify where, in the alleged 32 hours of tape recordings handed over to her, these exculpatory conversations are located.

Under Brady, the government must turn over evidence within its possession that is favorable to the defendant, and material to guilt or punishment.  See United States v. Barraza-Cazares, 465 F.3d 327, 333 (8th Cir. 2006).   To establish a Brady violation, a defendant bears the burden of showing that the government suppressed evidence, either willfully or

inadvertently; that the evidence was favorable to her, either because it was exculpatory or impeaching; and that it was material to the outcome of the trial.  See Masten v. United States, 752 F.3d 1142, 1146 (8th Cir. 2014).

The undersigned will deny Shontell Hill's motion.[9]  Shontell Hill's motion fails because it is undisputed that the government has already turned over the recorded conversations that Shontell Hill claims includes material information that is favorable to her defense.  In most instances, supplying the information would satisfy the government's Brady obligations.  See Villasana v. Wilhoit, 368 F.3d 976, 979 (8th Cir. 2004) (holding that once "the existence of allegedly suppressed evidence became known to the defense," then "Brady requires no more").

Shontell Hill's request here goes further—she appears to be requesting that the government do her work for her by pinpointing the location of the alleged Brady material in the tape recordings.  Shontell Hill argues that the tapes are 32 hours long, and it would be a waste of time and resources to require her counsel to dig through the tapes, looking for the exculpatory material.  Apparently she wants the government to locate where Watson's threatening statements appear in the recordings.

The government does not have a duty to do Shontell Hill's work for her.  Odem v. Hopkins, 192 F.3d 772, 777 (8th Cir. 1999) (holding that the duty under Brady is merely to turn purportedly exculpatory evidence over; to require more would "impose a duty on the prosecution to do the defense's work").  This is not a case where the government has turned over vast and unreasonable quantities of discovery, thereby resulting in the "effective concealment" of

---

[9] The undersigned is mindful that Brady requires disclosure, but there may be some considerations regarding timing.  See, e.g., United States v. Almendares, 397 F.3d 653, 664 (8th Cir. 2005) (holding that, in the Eighth Circuit, Brady does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial).

exculpatory evidence, or in which the discovery is so massive that it is proper to require the government to take affirmative measures to help the defendant. See United States v. Skilling, 554 F.3d 529, 576-77 (5th Cir. 2009) (vacated on other grounds, 561 U.S. 358 (2010)) (rejecting a claim that the government "should have scoured the [evidence] in search of exculpatory information" to give to the defendant, even though discovery was millions of pages, because the government provided the information in electronic, searchable format, and because "the government was in no better position to locate any potentially exculpatory evidence than was [the defendant]").

Here, the tapes are manageable in length, and Shontell Hill was a participant in the recordings in question. Therefore, she is in at least as good of a position as the government to know where, precisely, the allegedly exculpatory conversations are, and which conversations are exculpatory. In fact, having the government cull the recordings for Shontell Hill could result in the government inadvertently missing a relevant conversation due to a lack of context or familiarity with the nuances or intricacies of her defense.

In sum, the government has met its duty of disclosure under Brady. This is not the type of case in which a court might be justified in requiring the government to assist a defendant in locating a particular item within in a larger set of discovery. Therefore, Defendant's Motion for Disclosure of Favorable Evidence will be denied.

## V.       Motion for an Order Requiring the Government to Give Notice of 404(b) Evidence

Finally, Hill requests an order requiring the government to give "immediate" notice of its intention to use evidence, pursuant to Fed. R. Evid. 404(b), at trial. Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." See

United States v. White, 816 F.3d 976, 982 (8th Cir. 2016) (quoting Fed. R. Evid. 404(b)(1)). This evidence, while not permitted for propensity purposes, may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. White, 816 F.3d at 982. In order to admit this evidence, however, the government must "provide reasonable notice of the general nature of any such evidence," and must do so "before trial," unless good cause exists for the lack of notice. See Fed. R. Evid. 404(b)(2).

At this point in time, Plaintiff's motion to compel the government to provide the Rule 404(b)(2) notice is moot, because the government maintains that it "does not possess any evidence that it would seek to admit in its case in chief pursuant to Rule 404(b)." (ECF No. 147) Therefore, the undersigned will deny Hill's pretrial motion to compel the government to provide Rule 404(b) notice.

## CONCLUSION

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion To Dismiss Indictment On The Grounds Of Vindictive Prosecution (ECF No. 133) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss Count One (ECF No. 135) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss Counts Six and Seven (ECF No. 137) be **DENIED**.

**IT IS HEREBY ORDERED** that Defendant's Motion for Disclosure of Favorable Evidence (ECF No. 139) is **DENIED**, without prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion for an Order Requiring the Government to Give Notice of its Intent to use Evidence Pursuant to Fed. R. Evid. 404(b) (ECF No. 141) is **DENIED**, without prejudice.

The parties are advised that they have fourteen (14) days in which to file written objections to this Memorandum, Order, and Recommendation, unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

The trial of this matter has been set for October 3, 2016, at 9:00 a.m., before the Honorable Audrey G. Fleissig, United States District Judge.

/s/ *John M. Bodenhausen*
UNITED STATES MAGISTRATE JUDGE

Dated this 5th  day of  August  , 2016