UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. S3-4:15CR00440AGF (JMB) |
| | ) |
| SHONTELL HILL, | ) |
| | ) |
| Defendant. | ) |

## **ORDER**

This matter is before the Court on the pretrial motions filed by Defendant Shontell Hill. All pretrial motions were referred to United States Magistrate Judge John M. Bodenhausen under 28 U.S.C. § 636(b). Defendant Hill filed a Motion to Dismiss the Third Superseding Indictment on the Grounds of Vindictive Prosecution (Doc. No. 133), Motion to Dismiss Count One on grounds of Duplicity (Doc. No. 135) and a Motion to Dismiss Counts Six and Seven, contending that Defendant cannot be liable for identity theft because she had permission of the identity-holder (Doc. 137). Defendant also filed a Motion for Disclosure of Favorable Evidence (Doc. No. 139), and Motion for Immediate Notice of Intent to Use 404(b) Evidence (Doc. No. 141). The United States filed responses opposing all of Defendant's motions, and Defendant filed replies. The case is set for trial on November 7, 2016.

Judge Bodenhausen held a hearing on June 27, 2016, at which the parties offered argument, but offered no evidence or testimony other than what was proffered through counsel. Judge Bodenhausen thereafter issued a Memorandum, Order, and Recommendations ("R&R"), recommending that Defendant's three motions to dismiss be

denied, and that Defendant's motions for disclosure be denied without prejudice. (Doc. No. 177.) Defendant filed specific objections to the portions of the R&R denying the motions to dismiss, but acknowledged her motion for disclosure of Rule 404(b) evidence was moot, and offered no specific objection to the Order denying the Motion for Disclosure of Favorable Evidence.[1] (Doc. No. 181.) The United States filed a general response, simply stating that it relied on its previously-filed pleadings as well as the authority set forth in the R&R. (Doc. No. 187.)

When a party objects to a Report and Recommendation in a criminal case, the court is required to "'make a de novo review determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)). The Court conducted a *de novo* review of the motions to dismiss, including listening to the arguments presented at the hearing. Based on that review, the undersigned concludes that the Magistrate Judge made proper findings and correctly analyzed the issues, and therefore adopts and incorporates the R&R.

### A. Motion to Dismiss Due to Vindictive Prosecution

Defendant asserts that the indictment must be dismissed due to vindictive prosecution, alleging that the prosecutor added Defendant and her daughter to the indictment pending against Pierre Watson, and increased and amended the charges that

---

[1] While acknowledging that the Magistrate Judge's Order on the motion for disclosure of favorable evidence was "technically correct," Defendant stated that the ruling raised practical problems that she would need to raise with the District Court. However, the parties thereafter appeared before this Court for a hearing and did not raise the issue or request any relief. The Court therefore assumes that Defendant's concerns were rendered moot by this Court's grant of Defendants' motion to continue the trial date.

were previously pending against Defendant, in retaliation for Defendant's refusal to plead and refusal to cooperate against Watson. Much of the somewhat complicated chronology of events is described fully in the R&Rs related to Defendant's and Watson's motions, and will not be repeated here. The Magistrate Judge correctly recited the facts and identified and analyzed the proper legal standards that govern this Court's evaluation of Defendant's assertion of vindictive prosecution. (Doc. No. 177 at 5-8.) Following a de novo review of the record, the Court agrees with the Magistrate Judge that Defendant has not met her burden to establish either objective evidence of improper motive, or that a presumption of vindictiveness should apply.

Although it is not entirely clear, Defendant appears to assert in her objections that objective evidence of improper motive is shown from the sequence of events. Based on the timing and allegations of the second superseding indictment against Watson, in which Defendant was identified by her initials, and the fact that Defendant was indicted later, in a separate case, Defendant concludes that the prosecutor's representations regarding the development of the investigation must be untrue, and that the Magistrate Judge was misled regarding the true sequence of events. But Defendant's conclusions have no basis.

Watson and Darisha Taylor were first indicted in September of 2015. In its responses to the motions and at the hearing, the government has summarized the following facts related to the investigation, which Defendant has not refuted. The government has represented that during the course of its investigation, it suspected Defendant had passed counterfeit checks drawn on an account similar to one used by Taylor. (Doc. No. 159.) On January 20, 2016, a superseding indictment was filed against Watson and Taylor,

3

making certain corrections. Neither the initial nor the superseding indictment referenced Defendant Hill.

During the course of the investigation of Watson and Taylor, the government developed information regarding Defendant's involvement in that scheme. After Taylor's arraignment in late December, the government learned Defendant had placed calls to Taylor at Watson's request. *Id.* In November 2015, while he was incarcerated, Watson had telephone conversations with Defendant that the government alleges included an attempt at witness tampering directed at Taylor, but the government did not review the tapes of these calls until in or around January, 2016.

On January 26, 2016, Taylor entered a plea of guilty. The next day, the government filed a second superseding indictment against Watson only, whose case had already been set for trial. That indictment mentioned Defendant by her initials. It alleged in Count 3 that Watson induced S.H. to pass a counterfeit check on August 13, 2014, and based on the telephone calls, added a claim in Count 7, that Watson, aided and abetted by S.H., attempted to tamper with Taylor as a witness.

On February 18, 2016, "as a result of a collateral investigation into the activities of Defendant," a St. Louis County detective interviewed Defendant and her daughter, Desiree Hill, regarding the passing of counterfeit checks in their accounts. At that time Defendant admitted passing counterfeit checks, and also implicated Watson in some fashion. *Id.* Her statements were not further detailed at the hearing.

The following week, on February 24, 2016, Defendant was indicted in Case No. 4:16-cr-00081-JAR, involving the deposit of counterfeit checks into an account she opened

in her own name in August 2014, including two counts related to the same counterfeit check referenced in Count 3 of the second superseding indictment against Watson.

These events in no way suggest that the government's representations regarding its investigation were untrue or that the Magistrate Judge, who expressly noted the allegations regarding S.H. in the Watson indictment, was misled. To the contrary, they are consistent with the government's representations that it suspected Hill at or near the time Watson was initially indicted, and developed further information regarding Hill's involvement with Watson prior to initially indicting Hill. That the government did not charge Defendant until after she was interviewed by law enforcement officers and it obtained incriminating statements from her does not evidence vindictiveness, as Defendant contends, and is wholly consistent with responsible charging conduct.[2] Nor was the government required to include charges related to Hill's involvement with Watson at this time. Defendant has not shown that the government had completed its investigation of Hill's involvement or culpability by this date. In any event, as the R&R thoroughly discusses, the prosecutors were not required to assert all possible charges when the indictment was issued on February 24, 2016. Thus, there was nothing improper about waiting to indict or limiting the charges in Hill's initial indictment to the account Hill opened in her own name and the counterfeit checks she deposited into that account.

---

[2] Defendant also contends that waiting to indict until after Defendant gave her statement somehow reflects that the charges in the initial Hill indictment were brought solely for the purpose of pressuring her to cooperate, "since the statement alone would not be sufficient to sustain a verdict against her." (Doc. 181 at 4.) But this assertion makes no sense. The prosecutor never represented that Defendant *could* not be indicted prior to her interview. And of course, that was not the only evidence supporting the charges in Hill's initial indictment; they also had the accounts she had opened in her own name, her deposit of counterfeit checks, and her unlawful withdrawal of funds from the account.

Defendant was interviewed by Secret Service agents in approximately March of 2016, and made statements that supported the third superseding indictment, including an admission that she recruited her daughter in the unlawful conduct and used her daughter's identification to pass the two counterfeit checks. These statements made the prosecutor's case stronger, and the prosecutor also now had transactions to use that involved clear evidence of a real person whose identity was used in connection with the fraudulent conduct, which was not as clear with respect to the August 2014 counterfeit checks that formed the basis of the original indictment.

Prior to Defendant's arraignment on the initial indictment, which occurred on April 4, 2016, the government approached Defendant regarding cooperation, noting that her cooperation would be needed soon, as Watson's case was scheduled for trial. Defendant's attorney said he would discuss it with Defendant. During this time period, the government specifically advised Defendant that it was aware from the Secret Service investigation and from its review of tapes of telephone calls between Defendant and Watson, that she possessed information regarding Watson. The conversations about a plea and possible cooperation continued into May. In early conversations with Defendant, she was made aware of the taped telephone calls and the government's belief that the actions constituted witness tampering. Defendant therefore knew that the investigators had additional information regarding Defendant's conduct with Watson, beyond what was charged in her then-pending indictment. Defense counsel advised the prosecutor in early May that Defendant was not interested in either a plea or cooperation unless the government dismissed the aggravated identity theft charges, and the government

6

declined to dismiss those charges. Defense counsel sent a proposed amended plea agreement deleting the aggravated identity theft charges on May 15, 2016, which was immediately rejected by the government. Three days later, the superseding indictment at issue was filed. It was preceded by an email to Judge Ross's chambers advising that the government would be seeking to supersede the Watson indictment to add Hill, and that the government would then move to dismiss the original indictment filed against Hill.

The Court does not accept Defendant's further suggestion in her objections that the prosecutor's email to Judge Ross's chambers provides evidence of impropriety. There is nothing in that email to suggest that the "additional investigation" referenced in the email was either mere pretext or must have taken place between May 15 and May 18, 2016, as Defendant contends. Rather, the record reflects that the investigation evolved over time, that no new charges were brought during the brief time period between early April and mid-May, while the government explored whether Defendant was willing to cooperate against Watson or enter a plea, and that charges reflecting that additional investigation were filed when negotiations for a plea or cooperation broke down. Defendant has presented no evidence, whatsoever, to the contrary.

As discussed more fully in the R&R, the case law recognizes that there is nothing improper in a prosecutor seeking a superseding indictment to add additional charges, which in this case included Defendant's concerted action with Watson, including the alleged witness tampering, when a Defendant declines to enter a plea or cooperate.[3] And

---

[3] Defendant attempts to distinguish the case law recognizing that a prosecutor may bring additional charges in response to a Defendant's refusal to cooperate by arguing that here the prosecutor "never threatened to bring additional charges." (Doc. 181 at 5.) The

7

though Defendant now focuses solely on her refusal to cooperate, the fact is that Defendant was unwilling to plead to any charges of aggravated identity theft, and the prosecutor was unwilling to enter into any agreement for a plea that did not include those charges.

Nor does any of the conduct cited by Defendant give rise to a presumption of prejudice. This Court has fully reviewed the prosecutor's actions in the context of the entire proceedings, and agrees, for all the reasons discussed in the R&R, that Defendant has not provided "sufficient evidence to show a reasonable likelihood of vindictiveness exists." *See United States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015) (internal citations and quotations omitted). As the R&R notes, Defendant's burden to provide such evidence is a heavy one, as a "presumption of regularity" attaches to prosecutorial decisions "in the absence of clear evidence to the contrary." *Id.* at 880. Defendant has offered nothing more than conjecture and innuendo in support of her contention – which does not suffice. Indeed, based on a review of the entire proceedings, the Court sees no conduct suggesting any improper motive. As such, the Court rejects Defendant's contention that prosecutor had a burden to come forward with objective reasons beyond what has been offered.

For these reasons, and the further reasons discussed in the R&R, the Court denies Defendant's motion to dismiss based on vindictive prosecution.

---

Court is unaware of any case law holding that a prosecutor must *threaten* to file additional charges in order to bring additional charges in the pretrial stage of a case after plea negotiations fail, and Defendant has offered no such case law. In any event, even if one assumes that a defendant is entitled to some form of notice of potential additional charges, Defendant received that here. Early in their discussions Defendant was advised of the government's evidence that she had engaged in concerted action with Watson, including aggravated identity theft and witness tampering.

8

### B. Motion to Dismiss Count One as Duplicitous

For the reasons stated in the R&R, the Court also rejects Defendant's contention that Count I, which charges conspiracy, should be dismissed as duplicitous. Defendant contends that there was one scheme to commit bank fraud that occurred over several days in August of 2014, and a second and separate scheme that occurred over approximately 17 days in May of 2015. She further asserts that the fact of two separate conspiracies is confirmed by the fact that two separate charges of bank fraud are asserted with respect to each of these time periods. The Court does not agree.

Here, the indictment charges a conspiracy that took place over a period of approximately ten months (July 5, 2014 to May 22, 2015), with a single agreement and goal: to profit from passing counterfeit checks at federally insured financial institutions. The events occurred in the Eastern District of Missouri and used similar means. While J.T., D.T. and others are alleged to have participated in July and August, 2014, and Desiree Hill is alleged to have participated in May, 2015, it does not matter that the actors changed over time. *See United States v. Roach*, 164 F.3d 403, 412 (8th Cir. 1998). And the indictment charges that two of the actors – Defendant and Pierre Watson – participated throughout the time period.

Defendant makes much of the fact that there was a nine month time gap between the earlier and the later alleged overt actions. The Court is not persuaded that this small time gap is material. Indeed, in this particular case the time gap has even less significance, because Watson was incarcerated from approximately the end of August until March or April of 2015. The indictment plainly paints Watson as the main player, who recruited

Hill and others to engage in this conduct and provided most if not all of the counterfeit checks. It is therefore no surprise that the conspirators would wait to continue their fraudulent activities until after Watson was released.

That the prosecutor chose also to charge two counts of bank fraud does nothing to change the fact that Count I alleges a single conspiracy with a common goal. Count I alleges overt acts that include many players and multiple types of unlawful conduct, including bank fraud; aggregated identity theft; making, passing or using counterfeit securities; and identity fraud used to violate state law. The remaining counts of the indictment simply single out a few – but not all – of those actions in separate counts. And the individual charges involve some – but not all – of the defendants. Thus, the prosecutors chose limit the bank fraud charge in Count Two to only Watson and Hill, and their conduct with respect to the withdrawal of $200 after depositing a counterfeit check in the amount of $465.90. And only Defendant and her daughter, Desiree Hill,[4] are charged in Count Three, with respect to the May conduct involving the account opened by Desiree Hill, and the attempt to withdraw funds and purchase merchandise using a debit card after Defendant and Desiree Hill deposited two counterfeit checks into the account. Charging some of the individual violations that are part of a larger conspiracy in separate counts is not uncommon, and indeed is commonplace in cases charging narcotics conspiracies. Charging specific bank fraud schemes does not alone dictate a finding of multiple

---

[4] The charges against Desiree Hill, who was 21 years old, were dismissed without prejudice after she was admitted to a pretrial diversion program. (Doc. No. 189.) But Defendant has presented no evidence that Desiree Hill did not commit the acts alleged in the indictment.

conspiracies any more than charging specific drug transactions by specific co-conspirators separated by time dictates a finding of multiple drug trafficking conspiracies.

The other arguments Defendant raises in her objections are not meritorious. It makes no difference that the conduct with respect to the account Defendant opened in her own name was originally charged in a separate indictment; what matters is what the current indictment charges. Defendant's assertion that the Magistrate Judge failed to assess the facts looking to the "totality of the circumstances" also has no basis. Based on a review of all of the circumstances, the Court finds a single conspiracy is alleged.

Moreover, as the Magistrate Judge noted, if there is a potential problem with respect to multiple conspiracies, it can be addressed through proper jury instructions. *United States v. Nattier*, 127 F.3d 655, 657 (8th Cir. 1997).

### C. Motion to Dismiss Counts Six and Seven

Defendant also objects to the recommendation that the motion to dismiss Counts Six and Seven, which assert claims of aggravated identity theft under 18 U.S.C. § 1028A, should be denied. Defendant asserts that the statute is limited to situations where the identity of another is stolen, and contends that does not apply here because the indictment, when reviewed as a whole, shows that Defendant's daughter, Desiree Hill, gave Defendant permission to use her identification. The Magistrate Judge held that Defendant's argument is foreclosed by the decisions of the Eighth Circuit in *United States v. Retana*, 641 F.3d 272, 274 (8th Cir. 2011) and *United States v. Hines*, 472 F.3d 1038, 1040 (8th Cir. 2007).

As an initial matter, the Court questions the propriety of imputing allegations of overt acts from the conspiracy count into the aggravated identity theft charges. Counts Six and Seven track the statutory language, do not incorporate any other paragraphs of the indictment, and on their face say nothing about the circumstances under which the other person's identification was obtained. Even if it were permissible to reference allegations in Count One to determine the sufficiency of these counts, paragraph (3)(n) of Count One merely states that Desiree Hill "provided her debit card and personal identification card to" co-Defendants Watson and Shontell Hill. (Doc. No. 100, at 5.) It is silent with respect to the circumstances under which Desiree Hill provided the identification and whether she authorized use of her cards for fraudulent purposes. Further, the prosecutor stated at the hearing that she was prepared to present evidence at the trial that Defendant previously said she used her daughter's identification without her daughter's permission. As such, the Court agrees with the United States that even if the law supported Defendant's position, it would be a matter for the jury that cannot be determined on this record.

But Defendant's argument also fails under the law of this Circuit, as it was rejected in both *Retana* and *Hines*. In her objections, Defendant concedes that the Magistrate Judge's conclusion regarding the holdings in these cases is correct, but argues that the Supreme Court's decisions in *United States v. Flores-Figueroa*, 556 U.S. 646, 650 (2009) and *Burrage v. United States*, __ U.S. __, 134 S. Ct. 881, 887 (2014) undermine the Eighth Circuit holdings. The Court does not agree.

*Retana* was decided two years after *Flores-Figueroa*, and in its opinion, the Eighth Circuit specifically rejected the argument that *Flores-Figueroa* undermined the Court's

prior holding in *Hines*.  *Retana*, 641 F.3d at 274-75.  Nor does the decision in *Burrage* undermine the Eighth Circuit's reasoning.  *Burrage* does state that an undefined term in a statute should be given its ordinary meaning.  But the Court disagrees that the term "without lawful authority" in the statute means with "without permission" in ordinary usage.  More importantly, the Court in *Retana*, mindful of the need to use "ordinary English grammar," declined to construe "without lawful authority" to depend on whether the use occurred "with or without the other person's permission."  *Retana*, 641 F.3d at 275.

In fact, at least five Circuits, including the Eighth Circuit, have addressed the issue raised by Defendant, and all have rejected the construction of the statute that Defendant advances here.  *See United States v. Ivanova*, No. 11 Cr. 614, 2014 WL 11510255, at *5-6 (S.D.N.Y. Mar. 19, 2014) (collecting cases).  Only the Seventh Circuit has held otherwise. *See United States v. Spears*, 729 F.3d 753, 756-58 (7th Cir. 2013) (en banc) (holding aggravated identity theft statute does not include use of the identification of another with that other person's permission or consent).  Moreover, the Eighth Circuit has since confirmed its decision.  *See United States v. Rodriguez-Ayala*, 773 F.3d 65, 68 (8th Cir. 2014) (holding, "[d]espite Rodriguez-Ayala's argument to the contrary, the government was not required to prove lack of victim's consent to prove aggravated identity theft"). Other Circuits have also declined to follow *Spears*.  *See United States v. Whicker*, 628 F. App'x 361, 365-66 (6th Cir. 2015) (declining to follow *Spears*); *United States v. Osuna-Alvarez*, 788 F.3d 1183 (9th Cir. 2015) (same); *United States v. Bercovich*, 615 F. App'x 416 (9th Cir. 2015) (reversing district court decision that held the aggravated

13

identity theft statute inapplicable where permission was given to use identification). These decisions, including the decision of the Eighth Circuit in *Rodriguez-Ayala*, were issued well after the Supreme Court's January 2014 decision in *Burrage*.

As such, the Court finds that Defendant's argument to dismiss Counts Six and Seven is foreclosed by binding Eighth Circuit case law.

## CONCLUSION

Accordingly, for the foregoing reasons, and the further reasons stated in the R&R,

**IT IS HEREBY ORDERED** that the Memorandum, Order and Recommendations of United States Magistrate Judge [Doc. 177] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein, and the Court overrules Defendant's Objections to the Report and Recommendation [Doc. No. 181].

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Indictment on Grounds of Vindictive Prosecution [Doc. No. 133] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Count One [Doc. No. 135] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Counts Six and Seven [Doc. No. 137] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Disclosure of Favorable Evidence [Doc. No. 139] and Defendant's Motion for an Order Requiring the Government to Give Notice of Intent to Use 404(b) Evidence [Doc. No. 141] are **DENIED as moot**.

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of October, 2016.